UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NICK R. HUGHES,<br><br>    Petitioner<br><br>v.<br><br>KAMALA D. HARRIS, State Attorney General,[1]<br><br>    Respondent. | Case No: C 11-1185 SBA (PR)<br><br>**ORDER GRANTING RESPONDENT'S RENEWED MOTION TO DISMISS PETITION AS UNTIMELY** |

Petitioner Nick R. Hughes, a former prisoner, filed the instant pro se action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the Court is Respondent's renewed, unopposed motion to dismiss the instant petition as untimely under the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). Having read and considered the papers submitted and being fully informed, the Court GRANTS Respondent's renewed motion and dismisses the petition.

**I.     BACKGROUND**

On August 20, 2004, Petitioner pled guilty to second degree robbery and admitted two prior serious felony convictions for robbery, with a maximum exposure of thirty years to life in prison. On November 30, 2004, he was sentenced to eleven years in prison. Petitioner did not appeal his conviction.

Almost two years later on September 1, 2006, Plaintiff allegedly requested

---

[1] Petitioner was released from custody in 2013, and therefore, the Court substitutes State Attorney General Kamala D. Harris as Respondent in this action. See Belgarde v. Montana, 123 F.3d 1210, 1212 (9th Cir. 1997).

1   transcripts from the Santa Clara County Superior Court. Dkt. 1-1 at 36-37.[2] On October
2   18, 2006, the court denied the request because the time for appeal had passed. Dkt. 1-6 at
3   2.

4   On December 14, 2006, Petitioner filed a petition for a writ of mandate in the
5   California Court of Appeal. Dkt. 9, Ex. 1. On January 16, 2007, the petition was denied
6   without prejudice to Petitioner filing an application for relief from default to file a late
7   notice of appeal. Dkt. 1-6 at 3.

8   On January 29, 2007, Petitioner filed a petition for review in the California
9   Supreme Court, raising two claims: (1) the trial court erred in denying his request for a free
10  transcript on appeal; and (2) his right to file a direct appeal was erroneously abandoned by
11  his trial counsel. Dkt. 9, Ex. 2. On March 14, 2007, the petition for review was denied.
12  Dkt. 9, Ex. 3.

13  Petitioner alleges that sometime in August 2008, he filed his first habeas corpus
14  petition in the Santa Clara County Superior Court. The court denied the habeas petition
15  September 24, 2008, without prejudice to refiling, and was provided the correct form to
16  refile his action. Dkt. 1-6 at 6-7.

17  On December 2, 2008, Petitioner filed a corrected habeas petition in the Santa Clara
18  County Superior Court. Dkt. 1-1 at 40. On March 13, 2009, the court denied the petition
19  on the merits. Dkt. 1-6 at 8-12.

20  On July 21, 2009, Petitioner filed a habeas petition in the California Appellate
21  Court. Dkt. 1-1 at 41. On August 7, 2009, the state appellate court denied the petition.
22  Dkt. 9, Ex. 4; Dkt. 1-6 at 13. There is no indication in the record whether Petitioner filed a
23  habeas petition in the California Supreme Court.

24  On March 10, 2011, Petitioner filed his federal habeas petition. Dkt. 1. On May
25  18, 2011, Respondent filed a motion to dismiss. Dkt. 9. In his opposition to the motion,
26  Petitioner argued that he is entitled to equitable tolling on the grounds that (1) he had

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

limited law library access and (2) he suffers from a mental impairment and physical ailments that impeded him from filing a timely federal habeas petition. Dkt. 11 at 12-15.

On December 20, 2011, the Court denied Respondent's motion to dismiss because the medical records presented were insufficient for it to render an informed decision regarding Petitioner's alleged severe mental impairment. Dkt. 14 at 9.[3] The motion was denied without prejudice to refiling, provided Respondent could demonstrate through authenticated medical reports that Petitioner was not entitled to equitable tolling based on his mental impairment or physical ailments. Id.

On November 25, 2013, Respondent filed his renewed motion to dismiss. Dkt. 34. In support of his renewed motion, Respondent lodged Exhibit 5, a compilation of Petitioner's comprehensive medical records from 2005 through 2011. Dkt. 34, Ex. 5. Petitioner has not filed an opposition to the renewed motion and the deadline to do so has passed.

## II.  DISCUSSION

### A.  OVERVIEW

AEDPA, effective April 24, 1996, imposes a limitations period on petitions for a writ of habeas corpus filed by state prisoners. In prisoner actions challenging non-capital state convictions or sentences, a habeas petition must be filed within one year of, inter alia, the date the judgment became final after the conclusion of direct review or the time passed for seeking direct review. 28 U.S.C. § 2244(d)(1). "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitations period

---

[3] At that time, neither Petitioner nor Respondent offered complete medical records of Petitioner's mental status during the relevant time period. Petitioner only provided five pages of medical records. Dkt. 1, Ex. K at 1-5. The Court found these records were insufficient to determine the status of his mental impairment and physical ailments during the relevant time period. Dkt. 14 at 6-7.

3

begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires. Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); Bowen, 188 F.3d at 1159 (same).

In the present case, Petitioner's sentence became final and the statute of limitations commenced to run on January 31, 2005, which is sixty days after the date of sentencing. See 28 U.S.C. § 2244(d)(1)(A); Cal. R. Ct. 8.308(a). Petitioner thus had until January 31, 2006, to file his federal habeas petition. However, he did not file his federal petition until March 10, 2011—more than five years after the limitations period had expired. As such, the petition is time-barred unless Petitioner can show that he is entitled to equitable tolling.[4]

Equitable tolling is unavailable in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation omitted). The party seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," preventing timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Id. at 1066 (internal quotations and citation omitted). At the same time, "[r]ather than let procedural uncertainties unreasonably snuff out a constitutional claim, the issue of when grave difficulty merges literally into 'impossibility' should be resolved in [a petitioner's] favor." Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002). When a prisoner is proceeding pro se, his allegations regarding diligence in filing a federal petition on time must be construed liberally. Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

### B.   STANDARD FOR EQUITABLE TOLLING

The Ninth Circuit has observed that, if a prisoner's mental incompetence "in fact caused him to fail to meet the AEDPA filing deadline," this may constitute an

---

[4] The Court previously found that statutory tolling was not sufficient to overcome the time bar to Petitioner's federal habeas petition. Dkt. 14 at 4.

4

extraordinary circumstance sufficient to satisfy the first requirement for equitable tolling. Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003).

In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated a test for use in determining whether mental illness or limitation forms a basis for equitable tolling:

> (1) *First*, a petitioner must show his mental impairment was an extraordinary circumstance beyond his control, by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Id. at 1099-1100 (emphasis added).

As noted, Petitioner has not opposed Respondent's renewed motion to dismiss. Nevertheless, in his opposition to Respondent's original motion to dismiss, Petitioner argued that he is entitled to equitable tolling based on his: (1) limited access to the law library; and (2) alleged mental impairment and physical ailments (i.e., migraine headaches). He sought to toll the limitations period from January 31, 2005 (when the limitations period commenced to run), through March 10, 2011 (the date he filed his federal petition).

As noted, Respondent has now submitted Petitioner's medical records for the 2005-2011 time period. The Court has reviewed those records, which are extensive, and is unpersuaded that Petitioner suffered from a severe impairment beyond his control that prevented him from understanding the need to timely file, or that rendered him unable personally to prepare a habeas petition and effectuate its filing. Bills, 628 F.3d at 1099-1100.[5]

---

[5] Under the Court's Standing Orders, the failure to oppose a motion may be

### C.   THE CDCR'S MENTAL HEALTH PROGRAM

The California Department of Corrections and Rehabilitation's ("CDCR") program for mental health encompasses four levels of mental health treatment, which include (in order from the lowest to highest level of treatment), the Correctional Clinical Case Management System ("CCCMS"), the Enhanced Outpatient Program ("EOP"), the Mental Health Crisis Bed, and the California Department of Mental Health ("DMH").  Williams v. Kernan, 2009 WL 2905760, *1 (E.D. Cal. 2009).

The appropriate level of care for an inmate is based upon his level of functioning.  Id.  An inmate's level of functioning is determined by the severity of his symptoms, his ability to conduct self-care, his ability to participate in activities of daily living, and his general adaptation to the prison environment.  Id.

An inmate's level of functioning is measured by his Global Assessment of Functioning ("GAF") score.  Id.  "GAF" is a scale used by clinicians to assess an inmate's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  See DSM-IV-TR.

A 61-70 GAF indicates mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function, but generally functioning pretty well, and with some with meaningful interpersonal relationships.  Id.  A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.)  Id.

A 41-50 GAF indicates serious symptoms such as suicidal ideation, severe obsessional rituals, or serious impairment in social, work, or school functioning.  Id.

---

construed as consent to the relief requested in the motion.  See Gwaduri v. I.N.S., 362 F.3d 1144, 1147 n.3 (9th Cir. 2004) (noting that the court has the discretion to construe the failure to oppose a motion as a consent to the relief sought in the motion).  Thus, Petitioner's failure to oppose Respondent's renewed motion presents a separate and independent basis upon which to grant the motion and dismiss the petition.

A 31-40 GAF indicates: "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Id.

### D. ANALYSIS OF MEDICAL RECORDS

#### 1. January 2005 – January 2007

Petitioner's medical records show that beginning in 2005, Petitioner was initially placed in the outpatient unit of CCCMS, the lowest level of prison mental health treatment. Dkt. 34, Ex. 5 at 2-3, 6, 7, 8, 10, 11, 13, 443.  He requested adjustments to his medication and, afterward, reported that he was "doing fine." Id. at 6, 13, 15, 17, 19, 21, 22, 24, 29, 45, 48, 57, 58.  In addition, his thought processes were within normal limits, and he was evaluated as stable. Id.  Although Petitioner showed signs of anxiety and depression, these conditions did not interfere with his ability to begin attending school and participating in group therapy as early as February 2006. Id. at 23-26.  Petitioner's "stable" mental health status remained the same throughout 2006, and his GAF score ranged from 49-65 until the beginning of 2007.  Therefore, the Court finds that Petitioner is not entitled to equitable tolling based on his alleged mental impairment from January 2005 through January, 2007.

#### 2. February 2007 – May 2007

In February 2007, Petitioner could not locate a psychiatric medical technician to confer with regarding his "distress" regarding an upcoming transfer to an open dorm. Id. at 42-48.  He complained to a correctional officer, who "misinterpreted" the conversation and placed Petitioner on suicide watch. Id.  He underwent a risk assessment the following day and was deemed to be at low risk for suicide. Id. at 52-56.  A hold was placed on the transfer. Id. at 49-51.

However, in March 2007, Petitioner's mental status declined to "poor" and his GAF was 48 to 49 (serious symptoms). Id. at 58-64.  By May 2007, Petitioner was transferred to EOP, the next higher level of mental health treatment. Id. at 68.  Thus, the Court finds that Petitioner is entitled to equitable tolling from February through May 2007 based on his

alleged mental impairment because the record shows his mental status deteriorated to poor," thereby potentially preventing him from filing a timely petition.

### 3. June 2007 – August 2008

By June 2007, Petitioner's condition had improved and he once again began using the library and attending group and individual therapy sessions. Id. at 80, 88, 104, 110, 121. By September 2007, Petitioner was evaluated as "articulate" and "very high functioning." Id. at 95.

From the end of 2007 through the beginning of 2008, Petitioner was "overall improved" and reported that he had successfully drafted his state habeas petition, which he planned to file at the end of July 2008. Id. at 108. By the end of August, he reported feeling better, with decreased anxiety, no suicidal ideation, and the ability to refrain from self-harm, showing "improvement and return to previous level of functioning." Id. at 178, 179, 180, 182. Based on the record presented, the Court finds that Petitioner did not suffer from a severe mental impairment and is not entitled to equitable tolling for the period from June 2007 through August 2008.

### 4. September 2008 – December 2008

From September through December 2008, Petitioner was sufficiently stable to re-file his state habeas petition (after having initially filed it using the wrong form). Id. at 163, 165, 166, 172. There is no evidence that Petitioner was mentally or physically impaired during this time period. Accordingly, Petitioner is not entitled to equitable tolling based on his alleged mental impairment from August through December 2008.

### 5. January 2009 – March 2011

On January 2, 2009, Petitioner reportedly cut his wrists while listening to La Bohème (an opera), but he claimed not to have any suicidal intent and stabilized a week later. Id. at 333-335, 338-339. By the end of January 2009, Petitioner was evaluated as "stable" and "overall things are good." Id. at 339.

By March 2009, Petitioner remained "stable" even though his state habeas petition had been denied. Id. at 321-322. Petitioner indicated that was disappointed and "in

8

shock," and planned to appeal to the federal district court. Id.  Despite this setback, he did not engage in any self-destructive thoughts or behavior. Id.  A few days later he said he was past the shock, and began working on his appeal and "researching legal cases related to his issues." Id.  He was optimistic about filing his case in federal court and showed no signs of suicidal or self-injurious ideation. Id. at 317.

Petitioner's levels of anxiety and depression fluctuated throughout the remainder of 2009, and during 2010 and 2011, though there is no indication in his medical records that he experienced any acute mental health crises that rendered him unable to understand the concept of timely filing or unable to prepare and file his federal petition.  In fact, he was able to file his state appellate court petition in July 2009, and he was later assigned to assist another inmate with his appeal in February 2011, before filing his own federal petition in March 2011. Id. at 434.

Throughout this three-year time frame from 2009 through 2011, Petitioner had occasional suicidal ideation, but with no actual plans to act on such thoughts.  Though Petitioner had intermittent incidents of "cutting" or "scratching" suggestive of emotional distress, the medical records indicate that such distress was not incapacitating and his mental state showed improvement within days or weeks after each incident.  During this time period, Petitioner continued to advocate for himself by requesting changes to his medications for both psychological and physical ailments, requesting changes to the open dorm and dining room assignments because they aggravated his agoraphobia, seeking additional therapy sessions when he needed them, and researching and pursuing his rights within the prison system.  Moreover, Petitioner was able to focus on his state court appeals, which demonstrated his actual ability to understand the need to timely file a petition and to effectuate its filing.  Therefore, Petitioner is not entitled to equitable tolling based on his alleged mental impairment from January 2009 through March 2011.

E.   **TOLLING BASED ON SEVERE MENTAL IMPAIRMENT OR PHYSICAL AILMENT**

The Court finds upon its review of Petitioner's medical records that, other than a brief short four month time frame from February through May 2007, Petitioner did not

suffer from a mental impairment in 2005 and 2011 that was of such severity that he was unable to understand the need to timely file his federal habeas petition or was unable to prepare the petition. See Bills, 628 F.3d at 1099-100.

In connection with the original motion to dismiss, Petitioner also claimed that he suffered from physical ailments (i.e., migraines). Dkt. 11 at 15. The medical records submitted by Respondent indicate that Petitioner was suffering from "headaches" and prescribed medication for his symptoms. See generally Dkt. 34, Ex. 5. There is no indication in the record that Petitioner's headaches were so severe that he was incapacitated in any way or otherwise unable understand the need to timely file his federal petition or was unable to prepare and file it. Therefore, the Court finds that Petitioner has not carried his burden under the first prong of the Bill test.

Alternatively, Petitioner has not met the second part of the Bill test, which requires him to show, under the totality of circumstances, that he exercised diligence in pursuing his claims to the extent he could understand them, but that his mental impairment and physical ailments made it impossible to meet the filing deadline. 628 F.3d at 1099-1100. The record shows that Petitioner was aware of the time limits for filing his various habeas petitions. His delay in filing his federal petition, in particular, appears to have resulted from his extensive research and lengthy filings, as opposed to any cognitive or physical deficits. By way of example, the instant petition contains a "memorandum" that is 206 pages long. Dkts. 1-1 at 1 – 1-5 at 30. Thus, the Court is not persuaded that Petitioner exercised diligence in pursuing the instant claims.

Accordingly, Petitioner's claim of equitable tolling based on his mental impairment and physical ailments from 2005 through 2011 does not save his petition from being untimely.

### F. TOLLING BASED ON LIMITED LAW LIBRARY ACCESS

Petitioner also previously sought equitable tolling based on the lack of law library

10

access.[6]  "[O]rdinary prison limitations on . . . access to the law library and copier" do not constitute extraordinary circumstances or make it impossible to file on time.  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted); see, e.g., Chaffer v. Prosper, 592 F.3d 1046, 1049 (9th Cir. 2010) (per curiam) (prisoner's pro se status, law library missing a "handful" of reporter volumes, and reliance on inmate helpers who were transferred or too busy to attend to his petitions are not extraordinary circumstances "given the vicissitudes of prison life").

        Here, Petitioner's conclusory allegation that his law library access was limited is unsupported by the record.  There is no evidence that Petitioner had any difficulty attributable to the alleged lack of law library access in filing his state court writ of mandate in 2006, his petition for review filed in 2007, and the state habeas petitions he prepared and filed beginning in 2008 through 2009.  Dkt. 9, Exs. 1-2; Dkt. 1-6 at 6-7; Dkt. 1-1 at 40-41.  These filings militate against equitable rolling.  See Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (noting that a prisoner's ability to file a prior state habeas petition is a factor in determining whether he was unable to timely file a petition in federal court, unless the prisoner has shown a significant change in conditions since the filing of that application); see also Ramirez, 571 F.3d at 998 (considering fact that prisoner made substantial legal filings in state court during relevant time period in concluding that limited law library and copier access did not make it impossible for him to file federal petition on time).  Here, Petitioner fails to show a significant change in conditions since he filed his last state appellate court petition in 2009.  Accordingly, the Court is not persuaded that any limited access to the law library caused the untimely filing of his federal habeas petition.  See Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

---

[6] In its December 20, 2011 Order, the Court did not find the need to address Petitioner's claim to equitable tolling based on his alleged limited law library access because it determined that the record needed to be developed as to Petitioner's alleged mental impairment and physical ailments.  Dkt. 14 at 9 note 9.

## III. CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have been amended to require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).

For the reasons stated above, Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Respondent's renewed motion to dismiss petition (dkt. 34) is GRANTED, and the petition is DISMISSED with prejudice.

2. A certificate of appealability is DENIED. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

4. This Order terminates Docket No. 34.

IT IS SO ORDERED.

Dated: 9/29/14

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.11\Hughes1185.GRANTrenewedMTD091914.docx

12